425 So.2d 893 (1983)
BORDEN, INC.
v.
HOWARD TRUCKING CO., INC., et al.
No. 82 CA 0220.
Court of Appeal of Louisiana, First Circuit.
January 4, 1983.
Writs Granted March 4, 1983.
*894 Eugene R. Groves, Baton Rouge, for plaintiff-appellant Borden, Inc. and for Dresser Industries in its capacity as intervenor.
*895 Felix R. Weill, Baton Rouge, for third party defendant and defendant in reconvention-appellant Dresser Industries, Inc.
Lawrence A. Durant, Baton Rouge, for defendant-appellee Northwest Ins. Co.
Leon R. Roy, Jr., New Iberia, for defendant-appellant Howard Trucking Co., Inc., et al.
P. Albert Bienvenu, Jr., New Orleans, for defendant-appellee Antoy William Ames, in behalf of Underwriters at Lloyd's, London.
Before PONDER, SAVOIE and ELLIS, JJ.
SAVOIE, Judge.
This case is before us for the second time. Plaintiff-appellant, Borden, Inc. (Borden), and intervenor, Dresser Industries, Inc. (Dresser), assert the trial court erred in finding no coverage under the liability insurance policies of defendant, Howard Trucking Co., Inc. (Howard). Additionally, defendant-appellant, Howard, also asserts the trial court erred in not finding that one of its insurers, Northwest Insurance Company (Northwest), provided coverage for the damages sustained by plaintiff-appellant.
This suit arises out of a contract of carriage wherein an item of cargo was damaged in transit. On October 26, 1976, Borden, through its agent, Dresser, contracted with Howard for the carriage of a compressor from Borden's methanol plant in Geismer, Louisiana, to Dresser's repair and maintenance facility in Harahan, Louisiana. In transit, Howard's truck overturned, damaging the compressor.
On August 2, 1977, Borden filed suit against Howard and Northwest, Howard's comprehensive automobile, general, and contractual liability insurer. Borden seeks recovery for repair costs to the compressor and special damages for the lost production of methanol consequential to the actual physical damage to the compressor because of the delay in getting the compressor back in operation.
Howard's cargo insurer, Antoy Williams Ames, an underwriter of Lloyds of London (Ames), was made a defendant by amended petition and petition of intervention filed jointly by Borden and Dresser on April 20, 1978. Northwest subsequently filed a motion for summary judgment to dismiss Borden's claim as against Northwest based on an automobile insurance policy exclusion. The trial court granted Northwest's motion. Borden devolutively appealed after motion for a new trial was denied.
This court in Borden, Inc. v. Howard Trucking Co., Inc., 372 So.2d 242 (La.App. 1st Cir.1979), writ denied, 373 So.2d 544 (La.1979), reversed and remanded, finding that the exclusionary clause[1] did not exclude coverage for consequential loss of use or loss of production.
On remand, the trial court rendered judgment against Howard and Ames in the sum of $174,203.63. Ames was subject to liability for only the cost of repairs for physical damage ($10,579.15 less its deductible of $5,000.00). The trial court dismissed all further claims against Northwest, holding that Northwest's policy did not provide coverage for consequential damages contrary to the holding of this court in Borden, supra.
*896 Borden and Dresser assert the trial court erred in: (1) finding no coverage under Northwest's policy, and (2) limiting the coverage under the Lloyds of London policy to the property damage.
Howard asserts the trial court erred in holding that: (1) there was compensable damages for the cost of repairs of the compressor in the amount of $10,579.15, (2) Borden was entitled to special damages for the consequential delay or loss of production, (3) the amount of damages for consequential delay or loss of production amounted to $163,624.48, and (4) Northwest's insurance policy did not provide coverage for the damages of consequential delay or loss of production.
Ames asserts the trial court erred in: (1) awarding judgment for physical damage to the compressor for "extra repair work at Dresser in the amount of $6,321.15", (2) awarding judgment for physical damage to the compressor for items of "Borden labor" in connection with repair of piping by Borden in the amount of $4,258.00, (3) holding that Borden was entitled to recover for loss of production, and (4) awarding "all costs" as against Ames and Howard, rather than a portion of the costs.
It is well settled in Louisiana that an insurance contract, or any other agreement, constitutes the law between the contracting parties. L.S.A.-C.C. Art. 1901; Oncale v. Aetna Casualty and Surety Company, 417 So.2d 471 (La.App. 1st Cir.1982); Schmieder v. State Farm Fire and Casualty Company, 339 So.2d 390 (La.App. 1st Cir. 1976), application denied, 341 So.2d 895 (La. 1977). Courts must give legal effect to the provisions of such insurance policies according to the true intent of the parties, which intent must be determined in the light of the policy provisions when the policy terms are clear and unambiguous and lead to no absurd consequences.[2]

BORDEN AND DRESSER
The first time this case was before us, we concluded that the application of the "care, custody and control" exclusionary clause in the insurance contract was to be strictly *897 construed.[3] Based upon this interpretation, Northwest, Howard's insurer, was found liable for the consequential delay or loss of production. We remanded the case back to the trial court for further proceedings in accordance with our holding. In the meantime, a writ of certiorari was applied for to the Supreme Court. Our Supreme Court denied writs, finding the decision of this court not to be a final decision. Borden, Inc. v. Howard Trucking, Inc., 373 So.2d 544 (La.1979). On remand from this court, the trial court chose to disregard our previous holding and followed the reasoning in Goodwin Well Service, Inc. v. Goss Construction Company, Inc., 380 So.2d 1246 (La.App. 3rd Cir.1980), and again found Northwest not liable for the consequential delay or loss of production. The trial court's reliance on Goodwin, supra, is error. We hold the applicable law for this case is as set forth previously. See Borden, supra.
Exclusionary clauses are strictly construed against the insurer, especially if they are of uncertain import. Borden, supra; Commercial Capital Systems, Inc. v. Paille, 333 So.2d 293 (La.App. 1st Cir.1976). Northwest's policy excludes coverage of damage to property "in the care, custody, or control" of the insured. In this instance, when the particular loss claimed by Borden occurred (i.e., loss of production), the compressor was "in the care, custody or control" of Borden, not Howard. Strictly construing the exclusionary clause and for the reasons mentioned in Borden, supra, we continue to hold Northwest liable for the damages due to consequential delay or loss of production.
Borden's assertion that the trial court erred in limiting coverage under Lloyd's policy for damages due to loss of production falls within the aforementioned principles regarding contracts between parties. Contracts of insurance are the law between the parties and policy exclusions are to be strictly construed against the insurer. L.S.A.-C.C. Art. 1901; Oncale, supra; Borden, supra.
Ames' policy provides:
"This policy covers the liability of the insured for loss or damage to lawful goods and merchandise while in the custody or control of the insured (and while in the custody of connecting carriers) in the ordinary course of transit within the contiguous States of the United States and the District of Columbia and Canada (except as provided elsewhere in this policy) ...."
The policy also provides a $50,000 liability with a deductible of $5,000. Ames concurs with the trial court's finding that the policy covers physical damage to the property damaged.
Ames' policy excludes damages for loss of market, delay, loss of use, or any other remote or consequential loss.[4] Although these terms are not specifically defined in the policy, they are not vague or ambiguous. As such, Ames' policy excludes coverage of loss of production as stated by the trial court. Therefore, Borden is entitled to that sum awarded by the trial court less the stated deductible.

HOWARD
Having previously determined that Howard's insurer, Northwest, is liable for consequential delay or loss of production, we need only address Howard's contention as to quantum of award and its liability for consequential delay or loss of production.
Howard first asserts that: (a) the amounts charged by Dresser for "extra repairs at Dresser", and (b) the amount expended for "Borden labor" related to the accident are in error. It is contended that the record fails to substantiate Borden's claim for the "extra repair at Dresser" in that: (1) the damage pre-existed the accident, *898 and (2) Dresser's bill of $6,321.15 for the "extra repair at Dresser" is not supported by the record. Howard also contends that the amount awarded for "Borden labor" is erroneous in that: (1) the trial court assumed all the labor time was spent in repairing and refitting the compressor as a result of the accident, (2) 16 hours rather than 38 hours 20 minutes were required to repair and refit the compressor, and (3) double-time wages were not contemplated or foreseeable under the contract of carriage.
The record clearly supports a finding that: (1) the damage did not pre-exist the accident, (2) Dresser's bill for "extra repairs" of $6,321.15 is well substantiated, (3) all Borden's labor time was spent repairing and refitting the compressor as a result of the accident, and (4) 38 hours 20 minutes were required to repair and refit the compressor after allowing seven (7) hours deduction for the normal installation time required. Howard's contention that double-time wages were not contemplated is without merit.
It is well settled in Louisiana that one is required to mitigate damages in both tort and contract. Altazan v. Pontchartrain Dredging Corporation, 385 So.2d 292 (La. App. 1st Cir.1980). Here, the record reflects that the compressor arrived at Borden's plant sometime before 7 A.M. on Sunday, October 31st. Had Borden waited until Monday to start installation of the compressor, Howard would be liable for $131,126.83 for lost production (i.e., $3,420.70 per hour for 38 hours 20 minutes). Borden's claim of labor in the amount of $4,258.00 is well supported in law and fact.
We may not substitute our own evaluations and inferences for the reasonable evaluations and inferences of the trier of fact unless those conclusions are clearly erroneous. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980); and Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ refused, 392 So.2d 690 (La. 1980). Finding no clear error on the trial court's part, we affirm their findings as to the aforementioned figures and issues.
Secondly, Howard asserts the damages for consequential delay or loss of production was not contemplated by the parties. The trial court found Howard liable for the damage suffered by Borden, based upon the negligence of Howard's driver, Noel Weaver, Jr. Thus, Borden's action lies in tort. As such, Howard is liable for all damages which are foreseeable from an accident of this type. Being a factual matter, we cannot say the trial court was clearly wrong in so finding. Additionally, Howard's procuring such insurance coverage indicates their intent to protect themselves from such liability. Thus, we affirm the trial court's finding of Howard's liability for the consequential delay or loss of production.
Finally, Howard asserts the record fails to support the $163,624.48 award for consequential delay or loss of production. They claim that: (1) Borden suffered no loss of sales, and alternatively (2) fixed costs were not included in the cost of production, (3) pre-accident production figures rather than post-accident production figures were used to compute Borden's loss, and (4) the total delay time was in excess by 11 hours.
The record reflects that although no loss of a sale was shown by Borden, their reserve level of methanol was reduced to compensate for the loss of production. With respect to the factual computations for the loss of production, it is well recognized that there are several acceptable accounting methods which could be used. We find no error in the trial court's use of the uncontroverted testimony and method used by Borden's accountant. Considering its great discretion in the award of damages, the trial court will only be reversed if those awards are clearly erroneous. Reck v. Stevens, 373 So.2d 498 (La.1979); and Durrett v. State of Louisiana, 416 So.2d 562 (La. App. 1st Cir.1982). We find the aforementioned awards given by the trial court to be within its discretion and in consonance with accepted accounting principles.

*899 AMES
Having previously determined the issues of consequential delay or loss of production, and quantum of award, we need only address Ames' contention regarding excessive "costs" of appeal.
The general rule is that the party cast in judgment should pay all costs of the trial. Gholar v. Security Insurance Company of Hartford, 366 So.2d 1015 (La.App. 1st Cir.1978). L.S.A.-C.C.P. Art. 1920 gives the trial court discretion to assess costs but limits that discretion. Appellate courts are obliged to review this ruling and assess costs which they consider equitable. L.S. A.-C.C.P. Art. 2164; Custom Builders & Supply, Inc. v. Revels, 310 So.2d 862 (La. App. 3rd Cir.1975). Trial courts should not be reversed unless their rulings are clearly erroneous. In this instance, equity should dictate a modification of the costs assessed.
Here, a judgment was rendered against Ames for $5,579.15 while that against Howard totaled $174,203.63 due to loss of production. It is inequitable that costs should be shared equally by Ames and Howard. In addition, in holding with our previous decision in this matter, Northwest is now cast in judgment for the amount upon which the trial court assessed to Howard. Disparity in the amount of award to Borden by the respective appellees dictates that the costs be borne proportionately with the awards assessed. In this instance, the judgment against Ames was approximately 3% of the total award granted to Borden. Thus, it is appropriate to assess Ames with 3% of the court costs, the remaining 97% to be borne by Howard and Northwest.
For the foregoing reasons, we reverse the trial court as to Howard and find liability in Northwest. The trial court's finding that Ames is liable only for the property damage less the deductible stated in the policy is affirmed. Since it is in accordance with accepted accounting practices, the quantum of award determined by the trial court is affirmed. Additionally, Northwest should bear a proportional share of the costs.
For the above and foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered in part, as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of Borden, Inc. and against Howard Trucking Company, Inc. and its insurer, Northwest Insurance Company, in solido, in the amount of $163,624.48, together with legal interest from date of judicial demand until paid, and for 97% of all costs.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Borden, Inc. and against Howard Trucking Company, Inc., and Antoy Williams Ames, an Underwriter at Lloyds, London, in solido, in the sum of $5,579.15, together with legal interest from date of judicial demand until paid and 3% of all costs of these proceedings.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Borden, Inc. and against Howard Trucking Company, Inc., in the sum of $5,000.00, together with legal interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that the judgment in favor of Northwest Insurance Company and against Borden, Inc., dismissing all claims of Borden, Inc. against Northwest Insurance Company, is hereby reversed.
In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
NOTES
[1] The exclusionary clause ruled upon in Borden v. Howard, supra, was the clause contained in Northwest's comprehensive automobile policy. However, Howard Trucking purchased three insurance policies from Northwest Insurance Co. The first was a comprehensive automobile liability insurance policy, the second was a contractual liability insurance policy, and the third was a comprehensive general liability insurance policy. It is obvious that it was the intention of Howard Trucking Co. to purchase complete coverage so that in the event of any loss of whatever nature, insurance would be provided to protect Howard Trucking Co. from the ravages of any sort of claim by the injured parties. In support of this interpretation, we find also that Howard purchased from Lloyds of London a $5,000 deductible policy which would provide coverage for the exclusion in Northwest's automobile policy. The Lloyds of London coverage did this but did not provide for any intangible losses. Taken as a whole, it is obvious that Howard set out to insure themselves against any and all contingencies. The policies themselves clearly illustrate this point.
[2] Particularly significant are the comprehensive general liability insurance policy provisions, which read as follows:

"Coverage ABODILY INJURY LIABILITY
"Coverage BPROPERTY DAMAGE LIABILITY
"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
"A. bodily injury or
"B. property damage
"to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements. (Emphasis added).
"Exclusions
"This insurance does not apply:
* * * * * *
"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from (Emphasis added)
"(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
"(2) The failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured:
"but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;"
* * * * * *
The intent of the parties then is that this comprehensive general liability provision should be all inclusive in its coverage save for those "occurrences" which are specifically and unambiguously excluded.
The only exclusionary provision dealing with liability for loss of use deals with loss of use where the "tangible property ... has not been physically injured or destroyed ..." Here, the compressor was physically damaged, thus vitiating this exclusion and mandating payment under the comprehensive liability provision.
[3] Borden, Inc. v. Howard Trucking Co., Inc., 372 So.2d 242 (La.App. 1st Cir.1979), writ denied, 373 So.2d 544 (La.1979).
[4] "6. THIS POLICY does not insure the liability of the insured for:

* * * * * *
"(c) Loss of market, delay, loss of use or any other remote or consequential loss;"