480 So.2d 1064 (1985)
Bryan D. HAGGERTY
v.
James "Jay" MARCH and Ronald Steele Ruiz.
No. 85-CA-326.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1985.
*1065 Jacques F. Bezou, P.O.C., Russell A. Solomon, New Orleans, for plaintiff-appellant.
Ferdinand J. Kleppner, Law Offices of Ferdinand J. Kleppner, Metairie, for defendant-appellee.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
KLIEBERT, Judge.
This is a suspensive appeal by James March, defendant, from a judgment, following a jury trial, finding the plaintiff, Bryan Haggerty, had transferred his stock in Oak Home Improvements, Inc. to March as a result of fraud or duress, causing Haggerty to sustain a loss for which an award of $25,000.00 was made. The plaintiff crossappealed. We affirm in part, and amend the verdict in part so as to nullify and set aside the damage award.
In February 1981 Haggerty and March formed Oak Home Improvements, Inc. for the purpose of engaging in the business of home improvements. Both were directors of the corporation. March was the president and Haggerty was the vice-president. Mrs. March was the secretary-treasurer of the corporation. The articles of incorporation contained a restrictive stock transfer provision. Initially, March and Haggerty each contributed $3,000.00 as capital to the corporation in return for 50% of the capital stock of the corporation. Subsequently, they each received from the corporation a $3,000.00 check marked "loan to start corporation." An unaudited letterized balance sheet submitted in evidence by the plaintiff through the corporation's accountant reflects the transaction covered by this check as "a loan by the corporation to its stockholders."
The business of the corporation consisted of selling home improvements, such as, roofing, siding or windows, to homeowners at a fixed price. In practice the work was let out to sub-contractors and performed under the supervision of the personnel of Oak Home Improvements, Inc. In order to pool and best utilize their respective talents, March was to be in charge of sales and Haggerty was to be in charge of the construction projects.
Shortly after the formation of the corporation the relationship of the litigants began to deteriorate. On October 22, 1981 Haggerty instituted suit against March alleging March fraudulently conspired to deprive him of his interest in Oak Home Improvements, Inc. and prayed for injunctive relief and damages. A preliminary injunction was issued enjoining March from disposing of any assets by bulk sales. He was, however, permitted to post bond and go forward with daily corporate activities.
Following the denial of exceptions, defendant March filed in limine lites a motion to exclude evidence as to the restrictive stock transfer provision on the ground such a provision could not be invoked by a selling stockholder and because the introduction of such a provision would confuse and prejudice the jury, thus outweighing any probative value it might have. When the motion was denied, counsel for March incorporated his objections into an exception of no right of action. The exception was also denied by the court.
The case proceeded to trial by jury on September 20, 1982. Plaintiff's and defendant's versions as to how the transfer of stock and signing of the assignments *1066 took place are diametrically opposed. According to Haggerty, on or about September 21, 1981, he was approached by March and asked to sign the power of attorney on the stock certificate in connection with a loan application. March then approached his wife at their home and had her sign the stock certificates as the secretary of the corporation.[1] Thereafter, without first reading them, he said he signed what he was told were stock pledges in connection with a bank loan with People's Bank in Chalmette. He denied any intention to transfer the stock to Haggerty. Several days thereafter, according to Haggerty, he was asked by March to meet him at his lawyer's office. At the lawyer's office, he was informed by March that he no longer had an ownership interest in the corporation because he had assigned it to March and unless he disassociated himself with the corporation March would report his alleged criminal conduct (hereinafter referred to) to the district attorney.
March, on the other hand, contends that following the incorporation and the commencement of business he became dissatisfied with Haggerty's performance. He did not like Haggerty's casual dress habits and more particularly he felt the corporation was being overcharged by sub-contractors on various jobs for materials Haggerty was subsequently using to improve his own home. March contends he informed Haggerty of his dissatisfaction and of his intention to sever his relationship with Haggerty and inform the district attorney of Haggerty's actions. In order to solve the disagreements between he and Haggerty and to quash any possible actions by the district attorney, March contends he and Haggerty agreed to settle the matter between themselves as follows: In return for Haggerty's transferring his stock interest in the corporation, March would forgive Haggerty's $3,000.00 indebtedness to the corporation, assume all liability of the corporation and refrain from further complaints about Haggerty to the district attorney's office. The stock certificate was signed in blank on September 22, 1981. Subsequently an assignment was signed in the lawyer's office on September 29, 1981.
At the close of the case March moved for and was denied a directed verdict twice  when the plaintiff rested and again when the defendant rested.
The case was submitted to the jury on three interrogatories:
(1) Was the stock transfer transaction a result of fraud and/or duress?
(2) Has the plaintiff proven he has suffered a loss?
(3) What is the amount of damages?
The jury's response to interrogatories Nos. 1 and 2 was "yes", and in response to interrogatory No. 3, set the damages at $25,000.00.
On appeal March contends the jury erred in finding a fraud was committed and/or in finding a loss of $25,000.00 was sustained by Haggerty. Additionally, March assigns several issues or errors to the judge's ruling which can be condensed into the following trial judge's ruling: (1) denying the defendant's exceptions and motion, thus permitting the plaintiff to introduce evidence on the restrictive stock transfer provisions contained in the articles of incorporation; (2) refusing to give to the jury the defendant's special charges Nos. 32, 30 and 34 relative to the restrictive stock transfer provisions, Nos. 5 and 9 relative to fraud, No. 15 relative to duress, and Nos. 25, 26, 37 and 36 relative to proof of damages; (3) denying March's motion for a mistrial following highly prejudicial remarks made by Haggerty in the presence of the jury; and (4) refusing to grant a directed verdict at the close of plaintiff's case because plaintiff failed to prove fraud, duress or damages.
We consider first the assignment of error as to the judge's ruling or the jury's findings relative to the alleged fraud.
*1067 On an apparent "credibility call" the jury accepted Haggerty's testimony over that of March's and accordingly found the transfer of the stock by Haggerty to March was the result of fraud and/or duress. Under the standard of review we are required to follow, our function is not to determine whether some conclusion other than that reached by the trier of the facts can be supported by the evidence; but rather, whether the evidence contained in the record supports the conclusion drawn by the trier of the facts. Canter v. Koehring, 283 So.2d 716 (La.1973). Although diametrically opposite to March's testimony, since Haggerty's testimony supports the conclusion the transfer was the result of fraud or duress, we cannot say the jury erred in reaching its conclusion as to a fraudulent transfer. Additionally, we have carefully considered March's arguments relative to the judge's ruling affecting the issue of fraud or duress. To set aside the jury verdict based on an erroneous ruling of the trial judge the error must be one which is substantially likely to change the conclusion drawn by the jury. Couto v. OMS, 319 So.2d 518 (La.App. 4th Cir.1975). On review we found no error in the complained-of judge's ruling which would substantially change the jury's ultimate conclusion as to the fraud. Consequently, we cannot say the jury erred in responding "yes" to interrogatory No. 1.
Next we consider the assignment of error relative to the judge's ruling and/or the jury's findings relative to damages.
An action for an alleged fraudulent activity may be based on breach of contract under Civil Code Articles 1930 and 1847 or in tort under Civil Code Article 2315. Although the petition alleged Haggerty transferred his stock in the corporation on March's fraudulent representation the transfer was necessary to effectuate a loan by the corporation with the corporate stock pledged as collateral for same, Haggerty did not pray for a recision of the stock transfer. Rather, the petition entitled Petition for Damages and Injunctive Relief prayed solely for damages of $1,900,000.00.
Fundamentally, a plaintiff must prove his case before he is allowed to recover and in order to prove damages it is mandatory that he prove each and every element of the damages which he claims. Borden Inc. v. Howard Trucking Co., Inc., 425 So.2d 893 (La.App. 1st Cir.1983); Woodfield v. Dugas, 450 So.2d 1011 (La.App. 1st Cir. 1984); Savoie v. Judice, 458 So.2d 659 (La. App. 3rd Cir.1984). Thus, the issue here resolves itself to what loss the defendant sustained by virtue of the fraud or duress and whether such loss is recoverable from the defendant.
To support the plaintiff's claim for damages he submitted in evidence the corporation's 1981, 1982 and 1983 federal income tax returns. These were introduced over the objection of the defendant and without explanation as to their purpose or what evidence was to be drawn by the jury from the returns. Also submitted were limited financial statements. The cumulative effect of the returns and the statements was to show that the corporation sustained losses during the three year period between the time of the transfer and the trial and that at the time the stock transfer took place the net worth of the corporation was a negative $970.00. The record also shows that following the transfer of his stock the plaintiff returned to work for LAS Enterprises and earned as much or more than he earned while working for Oak Home Improvements, Inc. Additionally, at the time of trial plaintiff had commenced his own home improvement business and by the time of trial his earnings were the same as he had earned prior to the fraudulent transfer. The plaintiff made no effort to prove mental anguish or any other specific loss.
Although the corporate income tax returns were admissible to help establish the value of the stock at the time of the transfer, a stockholder cannot recover (other than through a stockholder's derivative action) for lost earnings of the corporation. See Lambert v. Maryland Casualty Co., 403 So.2d 739 (La.App. 4th Cir.1981); at page 745, affirmed by the supreme court at 418 So.2d 553 (La.1982). Further, although *1068 plaintiff argues he lost various benefits, such as an expense account and insurance benefits which the defendant received, he made no effort to prove the extent or amount of the benefits.
As previously shown, an action for alleged fraudulent activity may be brought as a breach of contract or in tort. If plaintiff's cause is under an action in contract his damages would be limited to actual pecuniary losses actually proven. However, if the action is brought in tort under La.C.C. Article 2315, the plaintiff may recover non-pecuniary losses. See Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976); Folds v. Red Arrow Towbar Sales, 378 So.2d 1054 (La.App. 2nd Cir. 1979); Childers v. Davis, 444 So.2d 692 (La.App. 5th Cir.1984).
The allowance of loss of profits [or dividends or appreciated values] as an element of damages is more liberal in actions purely in tort as opposed to actions for breach of contract. F & F Transfer, Inc. v. Tardo, 425 So.2d 874 (La.App. 4th Cir. 1983). Nevertheless, to recover for his lost profits or earnings, even in tort, the plaintiff must prove the loss with reasonable certainty. Dubois v. State of Louisiana through Dept. of Public Safety, 466 So.2d 1381 (La.App. 3rd Cir.1985); F & F Transfer, Inc. v. Tardo, supra. Mere estimates of loss will not support a claim for lost profits. Shreveport Laundries, Inc. v. Red Iron Drilling Co., 192 So. 895 (La. App. 2nd Cir.1939). Damages like any other fact should be proven by a preponderance of the evidence and to constitute a preponderance, such evidence must show the loss is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).
In order to recover for the benefits, the lost wages, or appreciated values of the stock, the plaintiff must show that he sustained an actual loss of the benefits or of the earnings due to the fraud of the defendant. Here, plaintiff gained new employment and earned as much if not more than he did prior to the transfer. Viewed either as a suit for breach of contract or as a suit in tort, the only damages proven by the defendant was the loss of his stock by fraudulent means.
Once it was proven the stock transfer had occurred by fraudulent means, the transfer was nullified; hence, the stock ownership remained as it was immediately prior to the transfer. See Placid Oil Co. v. Taylor, 345 So.2d 254 (La.App. 3rd Cir. 1977), writs denied 347 So.2d 261 (La.1977), where the organ of the court, referring to a mineral lease, said:
"The law of this state is unquestionably clear that a contract, the consent to which was obtained by fraud, is null and void. LSA-R.C.C. Article 1847"
Thus, not only did the plaintiff fail to prove a pecuniary loss by virtue of the transfer, but since the stock transfer was invalidated by the fraud, plaintiff cannot recover for the value of the stock because he still owns it.
For the reasons above stated, the jury erred in awarding damages for $25,000.00 for there is no evidence in the record to support the award. Simply, the plaintiff did not prove he sustained a loss, except that of his stock by virtue of the loss. This finding makes it unnecessary to consider the claimed errors of the trial judge relative to his failure to grant a directed verdict as to the damages or his failure to give some of the defendant's requested jury charges relative to speculative or punative damages and the need to prove with certainty specific damages.
Accordingly, the judgment of the district court is affirmed in part, and the verdict is amended in part so as to nullify and set aside the damage award. Each party to bear his own cost of the appeal.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] It is not clear from the record whether the stock certificates had been issued at the time of incorporation.