568 So.2d 1129 (1990)
Allen WEBER
v.
Terri BRIGNAC, Chris Brignac, Champion Insurance Company, St. John the Baptist School Board, and U.S. Fire Insurance Company.
No. 90-CA-270.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
Rehearing Denied November 16, 1990.
*1130 Becnel, Landry & Becnel, Daniel E. Becnel, Jr., Reserve, for Allen Weber, plaintiff-appellant.
Lobman, Carnahan and Batt, Edward P. Lobman, Lisa Montgomery Lewis, Metairie, for U.S. Fire Ins. Co., defendant-appellee.
Accardo, Edrington & Golden, William P. Golden, Jr., LaPlace, for Terri Brignac, Chris Brignac, Champion Ins. Co. and Louisiana Ins. Guar. Ass'n, defendants-appellees.
Before CHEHARDY, C.J., and GRISBAUM and GOTHARD, JJ.
CHEHARDY, Chief Judge.
This suit involves a van-school bus collision. At 7:30 a.m. on the morning of Friday, November 13, 1987, Terri Brignac was traveling in the family 1975 Dodge van with her husband and seven-year-old daughter as passengers. When she stopped for a stop sign the motor gave out. At the same time a school bus driven by Allen Weber and with 56 school children aboard stopped five to six feet behind the van. Mrs. Brignac was able to start her engine, but upon shifting gears she inadvertently put the van in reverse and it suddenly backed up and struck the front of the school bus. The investigating officer estimated the speed of the van on impact at two miles per hour and noted light damage to the bus.
Mr. Weber sued the Brignacs and their insurer Champion Insurance Company. He named as additional defendants St. John the Baptist Parish School Board and its uninsured motorist carrier, U.S. Fire Insurance Company. When Champion Insurance Company became insolvent, Louisiana Insurance Guaranty Association entered the suit on its behalf. The school board was never cast in judgment; its UM carrier was ultimately dismissed from the suit.
After a two-day bench trial the judge found that Mrs. Brignac's negligence was the sole cause of the accident and held her, her insurer and LIGA liable for damages. In explicit reasons for judgment he found that as a result of the accident Mr. Weber had suffered a neck sprain which aggravated his pre-existing cervical injury, disabled him for one month and caused him intermittent pain and discomfort for six months, through May 1988. The judge awarded plaintiff one month in lost wages, medical expenses for injury-related treatment and $3,000 in general damages, plus interest, costs, and expert fees.
Plaintiff Weber appeals the quantum verdict. He seeks: an increase in the general damage award; an award of additional medical expenses; and an increase in the award for economic losses.
The verdict is well supported by the facts of this case, preserved for review in the form of testimony and exhibits of record. We affirm the district court damage award.
Mr. Weber had a history of neck injury and irritation prior to the November 13, 1987 collision. In November 1981 he underwent an anterior cervical fusion at the hands of orthopaedic surgeon Dr. Raoul Rodriguez. Plaintiff enjoyed a good result with the disc surgery, but was left with degenerative changes in the discs and arthritis in part trauma related, in part a result of the natural aging process.
Plaintiff was treated conservatively by Dr. Rodriguez for whiplash-type injuries that he received in automobile collisions in December 1982 and March 1983. For the latter accident he was also seen for neck and shoulder pain by Dr. Christy Montegut.
During the next four years Mr. Weber was treated intermittently by these physicians for periodic neck and shoulder discomfort which Dr. Rodriguez related to degenerative changes.
In July 1984 Mr. Weber consulted Dr. Montegut for insomnia, and neck pain and stiffness upon waking. Dr. Montegut prescribed Ativan for sleep. The prescription was refilled in September 1985. In November 1985 the doctor diagnosed sinusitis in Mr. Weber.
*1131 In November 1986 plaintiff returned with complaints of pain and stiffness in the neck and upper chest after he did heavy raking. The doctor found cervical spasm and tenderness and prescribed Motrin. In January 1987 plaintiff consulted Dr. Montegut with complaints of severe shoulder pain aggravated by movement. The doctor diagnosed acute tendonitis and bursitis of the right shoulder. He administered an injection and advised rest and local heat.
In February 1987 Mr. Weber returned to Dr. Rodriguez for examination with complaints of pain in the neck radiating to the right arm. The doctor believed that plaintiff was experiencing nerve root irritation resulting from arthritis. Mr. Weber received an injection to reduce pain. He consulted the doctor twice in March for similar complaints and was given Naprosyn, an anti-inflammatory medication.
Dr. Rodriguez testified that because of the injury and fusion plaintiff's cervical area was sensitive to exertion. Plaintiff would have exacerbations of pain from time to time depending on his activity.
It is evident from medical history that Mr. Weber had neck weakness which resulted in periodic flare-ups of neck and shoulder pain. His course of treatment for each episode consisted of one to two office examinations and a prescription to reduce muscular inflammation and relax him.
In November 1987 as a result of the van-bus collision plaintiff presented with complaints of a painful neck and contusion to the left leg. On examination Dr. Rodriguez observed cervical muscle spasms. Plaintiff had a normal neurological examination. X rays reflected no recent fractures; they showed the same arthritic changes as were present before the accident. The doctor diagnosed a cervical sprain and prescribed Parafon Forte, a muscle relaxer. At his visit one month later Mr. Weber complained of a pulling pain in his neck on certain movements and headaches at the base of the skull. Dr. Rodriguez found plaintiff's range of motion improved and ordered a physical therapy regime. Plaintiff did not return for his follow-up appointment.
Dr. Rodriguez differentiated plaintiff's pre- and post-accident pain complaints. In early 1987 plaintiff complained of shoulder pain which the doctor related to arthritis resulting from the fusion. After the accident plaintiff complained of localized neck pain which Dr. Rodriguez believed resulted from a cervical sprain. He did not believe that plaintiff's shoulder complaints were caused by the van-school bus collision.
Plaintiff attended treatment with physical therapist Michael Murphy from December 1987 to May 1988. The therapy consisted of moist heat, ultra sound, cervical traction and neck massage. Plaintiff's complaints on presentation were pain across the neck to the right shoulder identical to the complaints of pain for which he had received therapy in 1982, 1983, 1984 and February 1987.
During therapy plaintiff consulted neurologist Dr. Maria Palmer on February 1, 1988 for complaints of neck pain specifically while driving, limited rotation, difficulty sleeping due to pain and stiffness, and blurred vision which he related to the November 1987 accident. He did not reveal the treatment for neck injuries in 1982 or 1983 treatment for recurrent pain and stiffness prior to the accident in 1987.
The doctor's physical examination revealed marked cervical spasm on the right and limited side to side motion of the neck. She agreed with the diagnosis of cervical sprain and with plaintiff's continued course of physical therapy. She prescribed anti-inflammatory drugs and muscle relaxers.
At plaintiff's next visits in March 1988 and April 1988 he continued to exhibit muscle spasms though physical therapy was improving his condition. On the final visit plaintiff complained of pain radiating to his right shoulder and stated that his headaches were reducing. He was continued on medication.
Plaintiff was not examined by any physician for the interim six months. In May and October he contacted Dr. Montegut by telephone and obtained prescriptions for Ativan, though he never reported the occurrence of the accident to him.
*1132 Plaintiff returned to Dr. Palmer in October 1988 with complaints of neck pain radiating to the left shoulder, and headaches. He had fallen and sprained his ankle. He had resumed his job as a bus driver. The doctor found muscle spasm increased on the left and she believed that plaintiff had had an exacerbation of his pre-existing spondylosis which resulted in persistent muscle spasm and headaches. She gave him something for the headache and asked him to return with X rays, but did not see him again.
Dr. Palmer testified that as plaintiff denied sinus trouble she related his headaches to muscular injury caused by the accident. Although she was told of the fusion she understood that Mr. Weber was asymptomatic before the accident and therefore believed that the cervical sprain had precipitated the recurrence and persistence of symptoms.
Beginning in October 1988 plaintiff sought treatment by Dr. V.R. Zeringue, orthopaedic surgeon, for complaints of neck pain radiating to both the right and left shoulders, numbness in the fingers, weakness in the upper extremities.
On examination his neck was tender to palpitation with limited range of motion. Plaintiff had tender shoulders with decreased sensation in response to pin prick. The doctor diagnosed degenerative disc disease and left shoulder fibrositis, inflammation of muscle tissues and ligaments which the doctor related by history to the van-school bus collision.
Plaintiff improved with conservative treatment through March 1989, when he presented with discomfort in the neck and only occasional headaches. At this visit Dr. Zeringue found plaintiff's condition to have stabilized and believed that he would have occasional discomfort tolerated with medication in future. The doctor's diagnosis and prognosis were based on the misunderstanding that after recovery from the 1983 fusion plaintiff had no problems with his neck or shoulder that required routine medical treatment and was not on any regular medication.
On examination at trial Mr. Weber denied having neck problems prior to 1987 except for his surgery. He then testified that he had experienced a different type of neck pain before the accident. He denied pre-accident complaints of shoulder pain or that he had trouble sleeping due to neck stiffness. Mr. Weber stated that he was not under active treatment by a doctor at the time of the accident and could not recall having been treated by either Dr. Rodriguez or Dr. Montegut in the year prior to the November 1987 collision. At trial he complained of neck pain, sleeplessness, shoulder pain and continuous, constant headaches since the accident.
In reviewing the trial judge's factual conclusion as to the extent and duration of plaintiff's injury we are guided by the principles set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our examination of the record is conducted to determine whether there is a reasonable factual basis to support the fact finder's decision and whether it is clearly correct.
On appeal Mr. Weber argues that his prior neck injury was severely aggravated by the accident. He seeks an increase in the general damage award, citing Gallardo v. New Orleans Steamboat Co., 459 So.2d 1215 (La.App. 4 Cir.1984), and Delaney v. Empire Ins. Co., 469 So.2d 1173 (La.App. 3 Cir.1985). These cases are inapposite; they report a lumbar disc herniation and lumbar laminectomy, respectively.
Our obligation as the forum for review is to determine whether the damages awarded were adequate: whether they compensate the particular plaintiff for the particular effects of the particular injuries. Reck v. Stevens, 373 So.2d 498 (La. 1979). We find no clear demonstration that the trier of fact abused his discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The trial judge awarded general damages for soft tissue cervical injury and six months of minor discomfort. We agree with his conclusion that plaintiff's accident-related pain did not persist beyond this time. Dr. Rodriguez testified that plaintiff's *1133 post-accident complaints were localized neck pain and stiffness. He made no complaints of shoulder pain during treatment and based on examination the doctor found that no shoulder injury had occurred in the November 1987 accident.
During subsequent examinations by Drs. Palmer and Zeringue, Mr. Weber complained of both neck and radiating shoulder pain which both doctors related by history to the van-school bus collision. Their conclusions are undermined by plaintiff's failure to divulge his full medical history. There is sufficient evidence of record to support the conclusion that Mr. Weber's neck sprain and resultant pain resolved itself within months of the November 1987 accident and that his subsequent discomfort from October 1988 to trial resulted not from the accident but from his 1981 surgery.
Where there exists a conflict in testimony the trial court's reasonable evaluations of credibility and reasonable inferences of fact are entitled to great weight on review. Canter v. Koehring Company, 283 So.2d 716 (La.1973). The fact finder stated that he found serious credibility problems with plaintiff's testimony. He chose to accept the testimony of treating physician Dr. Rodriguez as to the extent of Mr. Weber's neck sprain and related pain. On review of the record we agree that plaintiff exaggerated and confused his complaints of injury and pain. There is no clear error in the trial judge's finding that Mr. Weber's injury was minor and of short duration. Considering the injury in light of the particular plaintiff we find that the general damage award does not constitute an abuse of discretion.
Mr. Weber seeks an increase in his award of medical expenses. Specifically he claims recovery of $815, the cost of his treatment by Dr. Zeringue, future treatment costs and recovery of some $600 in pharmacy bills primarily for medication prescribed by Dr. Montegut.
Plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. He must show through medical testimony that the treatment, that which occurred and that recommended in future, was more probably than not necessitated by trauma related to the accident. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987).
Dr. Zeringue testified that plaintiff's neck and shoulder pain and reduced response to pin prick were causally related to the November 1987 collision. He believed that plaintiff required future medical treatment for the following two to three years at a cost of $500 per year. Although Mr. Weber told Dr. Zeringue that he had undergone a fusion in 1981 he omitted to report his intermittent treatment by Dr. Rodriguez for neck pain three times in 1987 prior to the accident, or that he was being maintained on medication by Dr. Montegut for headache complaints.
We believe Dr. Zeringue's testimony as to causation and the need for future medical treatment was tainted by plaintiff's failure to accurately report his medical history. The trial judge is obliged to weigh and evaluate medical testimony and may accept or reject the opinion expressed by a medical expert. He may substitute his own common sense and judgment for that of an expert witness where in the opinion of the trier of fact such substitution appears to be warranted by the evidence as a whole. Tyler v. Richardson, 476 So.2d 899 (La.App. 2 Cir.1985). The totality of the evidence supports the conclusion that the neck and shoulder pain for which plaintiff saw Dr. Zeringue stemmed not from the November 1987 collision but from the 1981 cervical fusion and the arthritic condition which resulted. The trial judge was therefore correct in denying plaintiff recovery for the cost of Dr. Zeringue's treatment and for future medical expenses.
Neither has Mr. Weber shown by a preponderance of the evidence that his pharmacy bills after May 1988 were causally related to the collision. Dr. Montegut prescribed Darvocet, Motrin and Ativan described at trial as muscle relaxers and medication to help him sleep. These were similar if not identical in nature to those administered *1134 by the doctor to plaintiff from 1983 to 1987 for yearly complaints of neck and shoulder pain and insomnia. This item of damage was properly denied.
Mr. Weber argues that the trial court committed error in awarding him only one month in lost wages. He claims that he is entitled to recover for work missed from December 1987 to May 1988 as a result of the accident.
The loss of past earnings is the monetary loss the victim experienced between the accident and trial. Folse v. Fakouri, 371 So.2d 1120 (La.1979). To recover a plaintiff must show proof to reasonably establish his claim. This may consist solely of plaintiff's testimony if considered credible by the trier of fact. Green v. Superior Oil Co., 441 So.2d 54 (La.App. 3 Cir.1983).
Though he could drive his car six weeks after the accident, Mr. Weber testified that he could not drive his school bus from November 1987 to the end of the school term in 1988. However he was observed by Mr. Perry Dugas operating a backhoe and a tractor a few weeks after the accident.
Plaintiff reported neck pain to Dr. Palmer in the spring of 1988. She allowed him to drive a car but recommended against his driving a bus where his limited neck motion might reduce his attention space and jeopardize the safety of the children. We believe that if plaintiff was physically capable of operating heavy equipment within weeks of the accident his neck restriction was not as severe as he indicated.
The trial judge specifically gave credence to the testimony of Mr. Dugas over that of plaintiff. We find no manifest error in this credibility assessment. Green v. Superior Oil Co., 441 So.2d at 56.
The district court damage award is based primarily on an assessment of the degree of plaintiff's sincerity as to his injury and pain. The evidence supports the award. There is no manifest error in the trial court decision. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court judgment is affirmed. Plaintiff-appellant is cast for costs.
AFFIRMED.