613 So.2d 691 (1993)
Everette BATES
v.
Mack WILLIS, Delta Container Company and Transportation Insurance Company.
No. 92-CA-797.
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1993.
*692 Gwendolyn S. Hebert, New Orleans, for defendants/appellees.
Laurence Cohen, Morris Bart and Associates, New Orleans, for plaintiff/appellant.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Plaintiff, Everette Bates, sues for physical injuries he sustained as a result of an automobile accident for which defendant, Mack Willis, was found liable. At the trial the parties stipulated to three facts:
1. On April 25, 1990 there was an automobile accident between the plaintiff, Everette Bates and the defendant, Mack Willis.
2. At all times relevant, in particular on the day of the accident, Mr. Willis was employed by and was acting within the course and scope of his employment with Delta Container Corporation.
3. On April 25, 1990 there was in force and effect a policy of liability insurance on Mr. Willis, his employer, and the vehicle he was operating in the accident issued by Transportation Insurance Company. The limits of which are $1,000,000.00.
After the trial the court found Mr. Willis to be solely at fault in the accident and awarded Mr. Bates $14,087.00 in damages for physical injuries sustained. Mr. Bates appeals that judgment arguing that the injuries sustained were more severe than those found by the trial court, that he is entitled to future medicals and that the award is too low to fairly compensate plaintiff for his injuries. We have reviewed this matter and affirm the trial court.
The facts as gleaned from the testimony at trial show that Mr. Willis was driving an 18 wheel truck owned by Delta Container Corporation on Clearview Parkway in a northerly direction. As he drove up the overpass over the Earhart Expressway in the left lane he came upon a lane closure due to construction. He checked his rear view mirror. Seeing nothing to impair a lane change, Mr. Willis moved over into the center lane. Unfortunately Mr. Bates was driving his car in the same direction, but slightly behind Mr. Willis, in the right lane, and a collision occurred. The severity and force of that collision was in dispute at the trial court level but is not an issue before this court.
The issue which is before this court and to which we devote our attention is the severity of physical injuries sustained by the plaintiff as a result of the collision. Several medical experts offered testimony before the trial court. Dr. Joshua Williams, a general practitioner testified that plaintiff was seen initially by an associate, Dr. Farley, on April 26, 1990 and was diagnosed as having a cervical lumbar strain. Dr. Williams saw Mr. Bates on three occasions subsequent to that initial visit. Dr. Williams stated that Mr. Bates' injury appeared to be resolving on May 31, 1990. However, on July 10, 1990 Mr. Bates returned with complaints of an intermittent pain through his left arm and into his fingers. Mr. Bates also complained of some leg pain. Dr. Williams recommended that plaintiff see an orthopedic surgeon.
Dr. Daniel Johnson, who ran an MRI on Mr. Bates testified that he found an abnormality at the C6-7 disc which he described as a herniation or bulge which projects back sufficiently to come near the interior surface of the spinal cord. He further explained that despite that appearance the disc is not touching the spinal cord because it is protected by the intervening thecal sac. The disc has indented, but has not ruptured the thecal sac and there is no impingement on the nerve root. Dr. Johnson opined that Mr. Bates had a herniated cervical disc. He also stated that the lumbar findings were normal.
*693 On cross-examination Dr. Johnson admitted that the report also indicated evidence of bone spurs in the cervical area but he did not think that the finding had any particular significance.
Dr. Joseph Watermeier, an orthopedic surgeon who treated Mr. Bates, testified that he first saw plaintiff on July 24, 1990. Mr. Bates complained of pain in the low back and neck, as well as radiating pain in his left arm and left leg. An examination at that time revealed that Mr. Bates had a full range of motion of the spine. He had mild tenderness to palpation but no muscle spasm. The range of his right shoulder was slightly limited, but he had equal reflexes. He had mild pain in the cervical area on axial compression of the head. An examination of the lumbar region revealed no abnormalities. Mr. Bates had an intact neurological examination. However, Dr. Watermeier opined that his symptoms were consistent with a herniated cervical disc and recommended therapy, medication and traction.
Subsequently in October, 1990 Mr. Bates returned to Dr. Watermeier complaining of pain in the left arm as well as continuation of previous symptoms. An examination at that time showed the same good range of motion and no neurological abnormalities. Dr. Watermeier testified that he consulted with Dr. Leclercq,[1] a neurosurgeon, who read Mr. Bates' MRI and concluded that Mr. Bates had a herniated disc which would likely require surgery in the future.
After the October visit, Dr. Watermeier saw Mr. Bates again in March, April, July, October and December, 1991, Dr. Watermeier issued a report prior to the July, 1991 visit in which he estimated that Mr. Bates had a ten percent permanent anatomical disability to the spine. He also stated that surgery would be required at some future point to relieve the pain.
On cross-examination Dr. Watermeier testified that he did not find any diminished reflexes or decreases in sensory perception in either upper extremity. Nor was he able to clinically reproduce the radiating pain into the left arm as described by Mr. Bates. Dr. Watermeier also characterized plaintiff's injury as a "mild herniation" which is synonymous with a bulge and is the least severe type of herniation.
Dr. Richard Levy, a neurologist, testified on behalf of the defense. His diagnosis is in conformity with the other medical evidence presented insofar as he stated that Mr. Bates has a mild herniation, or bulge, at the C6-7 disc that is not impinging on a nerve. He also found no abnormalities as a result of neurological tests. However, he disagrees with plaintiff's medical experts on the significance of bone spurs in the neck. It was Dr. Levy's opinion that Mr. Bates' condition was due to the natural aging process. He stated that the MRI showed the beginning of an arthritic bar of bone, not an uncommon finding in a thirty-six year old man.
Mr. Bates testified that he had no neck or back pain before the accident. The pain began after the accident and was concentrated in the neck and lower back. He further testified that his lower back pain had improved but his neck continued to be stiff and sore. He was also experiencing intermittent pain into his left arm at least seven times a day for a duration of two to thirty seconds.
There was also evidence presented to show that plaintiff took a job collecting coins from and reprogramming telephones for CRS Communications Corporation in July, 1990, a few months after the accident. In January, 1991 Mr. Bates told his employer he was advised by his doctor not to lift heavy weights. There is some disagreement as to whether the plaintiff quit his job or was discharged because of his disability. Stan Plauche, the owner of CRS Communications testified that he offered Mr. Bates a sales position when his medical condition was revealed but Mr. Bates refused the offer. Mr. Plauche further testified that when plaintiff came in to return the sales book he had been studying he was riding a motorcycle.
Mr. Bates refuted testimony from CRS officials that he left voluntarily. He did *694 not comment on whether he was offered a sales job in place of his former position. He did admit he rode a motorcycle, but stated that he was never instructed by his doctors not to do so.
At the end of the trial the court took the matter under advisement and subsequently ruled in favor of plaintiff. The judgment is accompanied by well written, extensive reasons for judgment in which the trial court reviews the evidence and concludes as follows:
While this Court thus concludes that plaintiff's injuries were caused by the defendant's fault, the nature and severity of the injuries were disputed at trial. According to Mr. Bates' medical experts, he suffered a lumbar strain and a broad-based central herniated cervical disc; while an anterior surgical fusion could be performed to relieve the pain, plaintiff has elected conservative treatment on an "as needed" basis. Defendant's expert, in contrast, determined from an examination and MRI review that the mild posterior bulge of the cervical disc, accompanied by a mild backward projection of the bone and the symptoms Mr. Bates described, suggested the onset of arthritis rather than a herniated disc.
Considering these opinions and the foundations therefor, and even according due weight to the testimony of plaintiff's treating physicians, the Court concludes that plaintiff sustained a cervical soft tissue injury and a lumbosacral strain in the above-described accident. While plaintiff continues to have complaints regarding the cervical injury approximately eighteen months after the incident, it is found that Mr. Bates' condition has been neither severe nor debilitating. Therefore, the Court awards plaintiff the sum of $10,800 for past and future pain and suffering, plus medical specials established at $3,248; future medicals are denied as unproven.
Our review of the trial judge's factual findings as to the extent and duration of plaintiff's injury is guided by the principles set forth in Arceneaux v. Dominque, 365 So.2d 1330 (La.1978); see also Weber v. Brignac, 568 So.2d 1129 (La.App. 5 Cir.1990). The standard on review mandates that the appellate court can only modify a factual finding if a determination is made that the finding is clearly wrong or the trial court has committed manifest error. Where there is conflict in the trial testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on appeal even though the reviewing court may make alternative reasonable evaluations and inferences. Rosell v. Esco, 549 So.2d 840 (La.1989); Gulf American v. Airco Indus. Gases, 573 So.2d 481 (La.App. 5 Cir.1990).
We are mindful of the well settled principle that the testimony of the treating physician is to be afforded greater weight than the testimony of the physician who examines the patient only once or twice. Berthelot v. Imes, 459 So.2d 1384 (La.App. 1 Cir.1984); Nathan v. Home Depot, 522 So.2d 712 (La.App. 5 Cir.1988) writ denied 530 So.2d 84 (La.1988). The reason for such preference is that the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1 Cir. 1984) writ denied 462 So.2d 1247 (La.1985); Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1 Cir.1987).
However, the weight afforded the treating physician's testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based. Walker v. Marcev, 427 So.2d 678 (La.App. 4 Cir.1983) writ denied, 433 So.2d 182 (La. 1983); Wells v. Allstate, supra.
It is equally well settled that the plaintiff bears the burden of proving, by a preponderance of the evidence, a causal relationship between the accident and the injuries of which he complains. Weber v. Brignac, supra.
In the instant case all physicians agreed that there was an abnormality in the area of the C6-7 cervical disc. They also agreed there was no impingement on the nerve and no neurological problems. It was the conclusions which differ. Dr. Watermeier, *695 an orthopedist, believed the injury resulted from trauma received in the accident. Dr. Levy, a neurologist, believed the abnormality was the result of the normal aging process.
The trial court afforded deference to the treating physician but found the injuries to be less severe and consistent with Dr. Levy's diagnosis of lumbar strain and soft tissue injury. Given the testimony, the individual physicians' qualifications, and the reasons for judgment, we cannot say the trial court's findings are clearly wrong or that manifest error exists. Further, we do not agree with plaintiff that the award of general damages is insufficient.
Plaintiff also asserts error in the trial court's failure to award damages for vocational rehabilitation services and future medical expenses. It is the plaintiff's burden to prove with legal certainty every item of the damages claimed. Hargroder v. Protective Life Ins. Co., 556 So.2d 991 (La.App. 3 Cir.1990), writ denied 559 So.2d 1367 (La.1990). In order to prove damages a plaintiff must prove each and every element of the damages which he claims. Haggerty v. March, 480 So.2d 1064 (La. App. 5 Cir.1985); Gulf American v. Airco Indus. Gases, supra.
At trial Dr. Craig Feldbaum, a psychologist and rehabilitation counselor, testified that Mr. Bates would benefit from vocational rehabilitation. However, he also testified that the restrictions placed on plaintiff by his doctors were not onerous and that given Mr. Bates' skills and intelligence he would only need help in exploring his options. Dr. Feldbaum stated that he administered several tests to Mr. Bates and found him to have a very high verbal intelligence, strong reading abilities and average mechanical aptitude. He is also trained in telecommunications and electronic technology. Dr. Feldbaum opined that Mr. Bates has transferable skills and does not need to be re-trained. He simply needs focus. Plaintiff's job history shows that he has had fifteen different jobs in as many years. Given that testimony we believe a reasonable conclusion is, that while plaintiff needs counseling, now as he did before, on career focus, he does not need re-training as a result of the injuries. This, we believe, is not within the realm of compensable damages for an automobile accident.
The evidence presented at trial in regard to future medical expenses was offered by Dr. Watermeier who stated that the plaintiff would likely need surgery in the future at a cost of $20,000 to $25,000. Dr. Watermeier explained that plaintiff would need an anterior cervical fusion to relieve the pain in his neck. However, he also stated that if the plaintiff could live with the pain the surgery would not be necessary. On cross-examination he admitted that a less invasive microsurgical technique involving a posterior entry was advocated by Dr. Leclercq which might accomplish the same pain relief. Dr. Watermeier stated that he did not practice that particular procedure and would defer to those who do. However, since Dr. Leclercq did not testify it is not clear whether he would agree with Dr. Watermeier that surgery was indicated and, if so, what the cost would be.
The plaintiff testified that he had decided not to have the surgery but when he was considering it, he would not have chosen Dr. Watermeier to perform the surgery. Given these facts we cannot say the trial court erred in finding that damages for future medical expenses were unproven.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Dr. Leclercq did not testify in this matter, nor was his deposition taken.