CRAIN, Judge.
Defendant, State Farm, the plaintiffs uninsured/underinsured motorist carrier (U.M.), appeals a judgment of the district court which resulted when the trial court granted plaintiffs motion for a judgment notwithstanding the verdict[1] (JNOV) and increased the jury’s general and special damage award. Plaintiff answers the appeal and seeks an increase in the general damage award she received for temporomandibular joint (TMJ) injury. Finding error in the ruling of the trial court, we reverse the ruling of the trial judge on the motion for the JNOV on the issue of general damages and reinstate the judgment of the jury on the issue of general damages. We amend and affirm the ruling of the trial judge on the motion for the JNOV on the issue of special damages.
The facts out of which this accident arose are not in dispute.
On April 14, 1989, Shirley Griffin was a guest passenger in a vehicle owned and operated by her husband, William Griffin, and insured by State Farm Insurance Company (State Farm). At the time of the accident, the Griffin vehicle was stopped in traffic, in the westbound traffic lane of Florida Boulevard, near Flanney Street, in Baton Rouge. This vehicle was struck in the rear by a vehicle owned and operated by Charles Manning [2] and insured by Andrew Jackson Casualty Insurance Company. (Andrew Jackson)
Shirley Griffin had been involved in another rear-end accident on February 27, of this same year.
Following a jury trial, judgment was rendered in favor of plaintiff and against defendants in the amount of $2500 general damages and $1,500 special damages.' The plaintiff filed a motion for a JNOV and alternatively, a motion for a new trial. The court granted the motion for the JNOV. It rendered judgment in favor of the plaintiff and against defendants, State Farm and Andrew Jackson, in the total sum of $42,838.53, casting Andrew Jackson for $10,000 and State Farm for the balance. The new judgment consisted of a general damage award for cervical injuries in the amount of $10,000; a general damage award for TMJ injuries in the amount of $20,000 and a special damage award in the sum of $12,838.53. In reaching its decision to grant the JNOV the court reasoned as follows:
THE COURT: Again, I reiterate it for the fourth or fifth time, I was shocked that they didn’t give a larger award just for the soft tissue injuries, if nothing else. This is truly a dilemma....
I personally am convinced that the TMJ was there and was a result of the accident sued upon. It’s difficult for me to grant a *363 motion for JNOV because I don’t think I’ve ever done it before in all these years, maybe once. I’ve been having an uneasy feeling about this case ever since the jury came in because I think in the colloquial expression, I think they lowballed Mr. Bennett’s client something terrible....
Defendant, State Farm, appeals the judgment of the district court alleging the trial judge erred in granting the plaintiffs motion for a judgment not withstanding the verdict. State Farm contends that reasonable minds could differ, based on the evidence presented, as to the nature and extent of the plaintiffs injuries caused by the accident of April 14, 1989. In answer to the appeal, plaintiff seeks an increase in the general damage award for the TMJ injury from $20,000 to $50,000.
In Anderson v. New Orleans Public Service, Inc., 588 So.2d 829 (La.1991) the Louisiana Supreme Court discussed the criteria to be used in determining when a JNOV is proper. In Anderson, id. at 832 the court stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service District No. 1, 496 So.2d 270] [(La.1986)], supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Additionally, in Anderson, id., the court addressed the difference between a trial court’s evaluation of damages upon the grant of JNOV on quantum, as contrasted with an appellate court’s treatment of such an issue. The court, in Anderson, id. at 834, states:
The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury’s damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial judge properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco [v. Winston Industries, Inc., 341 So.2d 332] [(La.1976)], supra.
*364 The record reveals the following evidence concerning injury and damages in this case:
(a) Cervical Strain
Shirley Griffin was first involved in an automobile accident on February 27, 1989, when the vehicle in which she was riding was rear ended. She sustained a whiplash-type neck injury. She was transported to the emergency room of a local hospital where she was treated, medication was prescribed, and she was released.
Plaintiff visited Dr. Neal Rockowitz, an orthopedist, on March 3, 1989. She was examined by Dr. Rockowitz and referred to physical therapy where she underwent seven treatment sessions. Although Dr. Rockowitz told Ms. Griffin to return to him in 6 to 8 weeks if she continued to be symptomatic, Ms. Griffin did not return to him. She stated at trial that she resumed her normal activities follovung her course of physical therapy.
On April 14,1989, Ms. Griffin was involved in the current accident. She again experienced a whiplash-type injury to her neck. She was treated at the emergency room and released. She thereafter saw Dr. Rockowitz for one- visit, on April 17, 1989. She was again referred to physical therapy. She underwent therapy until mid May, 1989, and returned again for two visits in June, 1989. Although there is no evidence of treatment after this date for plaintiffs neck injury, she did keep a diary of her alleged complaints. Her symptoms were listed according to severity, ranging from “severe” to “symptom free”. There was no diary kept after the first accident and none for the second accident before June, 1989.
There were several inconsistencies-in Griffin’s testimony concerning her alleged injuries.
With regard to plaintiffs cervical injury, although she testified, at her deposition, that she was still taking medication as a result of the first accident at the time of the occurrence of the second accident, she denied this fact at trial.
Dr. Neal Rockowitz, the orthopedist who treated the plaintiff after each of her two accidents testified by video deposition. Dr. Rockowitz stated that he first saw plaintiff on March 3, 1989 and she indicated she had been in an automobile accident four days before her visit. She stated that she experienced headaches, neck pain, and a tingling in the right upper extremity, on the day of the accident. She had been seen in the emergency room and was given a prescription for Darvocet and Flexeril. Her pain had improved but not resolved. Dr. Rockowitz examined the plaintiff. He found plaintiff suffered tenderness of the right trapezius and some pain with left lateral flexion. She had an excellent range of motion in the neck, back and shoulders. Her upper extremities were normal and she was neurologically intact.
Dr. Rockowitz diagnosed Ms. Griffin as having an acute cervical strain of the right trapezius. She was given Feldene, in lieu of Darvocet, and referred to physical therapy. According to Dr. Rockowitz, plaintiffs symptoms apparently resolved, because she did not return in 6 to 8 weeks as he had instructed.
The plaintiff was again seen by Dr. Rock-owitz on April 17, 1989. She indicated she had been involved in a second accident. She gave a history very similar to the first. She had again suffered a neck injury in a rear-end accident. She was seen in the emergency room, where she was given Fiorinal, a soft cervical collar and released.
At the time of Dr. Roekowitz’s examination, Ms. Griffin manifested tenderness of the right and left sternocleid-omasteid and tra-pezius. She had full range of motion in the neck, a normal shoulder exam, and also a normal neurological exam. It was felt by Dr. Rockowitz that there was no change between the plaintiffs two sets of x-rays. Dr. Rock-owitz diagnosed the plaintiff as suffering from an acute cervical strain. He felt the condition was a little more severe the second time, because plaintiff was now experiencing tenderness on both sides of her neck. Plaintiff made no complaint to Dr. Rockowitz of jaw pain. He recommended physical therapy and Feldene. He told Ms. Griffin to return in 6 to 7 weeks if the symptoms were not resolved. She did not return.
*365 (b) T.M.J. Injury
Plaintiff testified that the first time she experienced the sensation that her teeth did not fit together was at a business meeting for her husband in Alexandria, Louisiana. Although she could not recall the date, she testified that she checked her calendar and found the date to be April 23, 1989. She stated that she felt some pain in her right jaw following her second accident, at a time shortly following her release from physical therapy. She scheduled an appointment for June 9, 1989, with Dr. Seth Lowell, an ENT specialist, at Ochsner Clinic.
Dr. Lowell felt Ms. Griffin was suffering from TMJ of the right side of her jaw. He noted from his interview that Ms. Griffin had more pain in her jaw area for about a week before she saw him. In her history the plaintiff indicated she had been involved in an auto accident in which her head and neck were effected but she did not recall striking anything in- her vehicle. Dr. Lowell noted that Ms. Griffin was taking Feldene and would be taking this for 7 to 10 days. Dr. Lowell considered a bite splint versus biofeedback. Upon examination, Dr. Lowell noted a tender right TMJ, and some mild asymmetrical movement. He found plaintiff had an edentulous maxilla.
Ms. Griffin was thereafter referred to Dr. Roger Peak, by her attorney. Dr. Peak saw her first in June, 1989. At the time of her visit, plaintiff had two lower teeth missing and she wore an upper denture. Ms. Griffin complained of pain behind her ears, and under her jaw and neck when she ate. She also stated her eyes were drawn and her nose numb. She complained she had difficulty eating. According to Ms. Griffin she was to receive a splint to her upper plate which was to be worn 3 to 6 months: Once her bite stabilized she would receive a new denture. Ms. Griffin visited Dr. Peak approximately 135 times. During this time, she was fitted for a splint, adjustments were made, the splint was removed, new dentures were ordered and two missing teeth were replaced.[3]
In December 1990, Ms. Griffin answered a questionnaire provided by Dr. Peak regarding symptoms related to TMJ. In answer to this questionnaire, plaintiff indicated she did not experience a number of the common symptoms associated with TMJ.[4] She also indicated that certain other symptoms were only occasionally present.[5]
According to Ms. Griffin, the application of her splint and its adjustment gave her, some relief. She stated that she experienced the most pain when an adjustment was needed and when the weather was cold or rainy. She also stated that the new dentures increased her symptoms, as did the receipt of her two new teeth. Additionally, stress caused plaintiff pain in her jaw. She stated that during this same time period she experienced stress from the death of her father and her son’s accident. Ms. Griffin testified, that by November 1989 the only pain she had was in her neck.
Ms. Griffin’s testimony was inconsistent, in certain aspects, with regard to her alleged TMJ injuries. At trial Ms. Griffin denied that the mouth splint, administered by her dentist within one month of her accident, corrected all her symptoms except her occasional neck pain; she however, admitted to this fact in her deposition. Additionally, although plaintiff testified during trial to the existence of a number of “symptom free” days during her course of recovery, she nonetheless qualified this at trial by stating she experienced jaw pain.
Dr. Roger Peak, a dentist, testified he first saw the plaintiff on June 19, 1989. She complained of face and neck pain. She stated that she was under a lot of stress. She also related that she had been involved in two rear end auto accidents over a four week *366 period and she was currently involved in physical therapy. Ms. Griffin complained of cervical pain, TMJ pain, facial pain, pain behind the eyes, visual disturbance, as well as backache in the thorasic and lumbar areas. After a physical examination, Dr. Peak suspected Ms. Griffin was suffering from TMJ. He wanted to apply a splint, as this would confirm his tentative diagnosis. That is, if the symptoms resolved or lessened with the use of the splint, this would confirm that plaintiff had TMJ. Dr. Peak treated the plaintiff extensively, from the time of her initial visit on June 19, 1989 through January, 1992. During this time, he prepared her mouth to receive the splint, applied the splint and made constant adjustments to it.
According to Dr. Peak, TMJ occurs when people clinch and grind their teeth. The origin of the clinching and grinding is unknown and there are some people who engage in this activity, yet do not develop typical TMJ symptoms. If not corrected, the clinching and grinding will wear down the teeth, split them, destroy the bone around the teeth and cause muscle pain. Dr. Peak also testified that TMJ results when the jaws do not match and the patient cannot adapt to the inability of his teeth to match. He stated that there are people with bad bites who do not have TMJ. According to Dr. Peak, some people who experience trauma get TMJ, yet there are some people who do not experience trauma who develop it. There are some patients with dentures who develop TMJ and some that do not.
According to Dr. Peak, if Ms. Griffin had no symptoms of TMJ after the first accident but did have them after the second accident, it is probable the second accident caused the condition. However, he noted that sometimes the cause is the first accident, but the symptoms don’t manifest themselves until after the second accident. Dr. Peak also added that it was impossible for him to tell which accident caused the TMJ because he did not examine the plaintiff after the first accident. Furthermore, the plaintiff could not relate to him enough information about her condition following the first accident for him to decide the cause or aggravation of her TMJ. Another factor, stated by Dr. Peak, which made causation a difficult issue for him to decide was the fact that more severe pain will mask TMJ pain. Moreover, time must elapse before the clinching teeth results in sore muscles.
In response to this question concerning causation or aggravation of the condition by the two accidents, Dr. Peak, in deposition, stated that he did not have enough information to be able to say.

General Damages

The jury awarded $2,500 as the total amount of general damages. In granting the JNOV, the trial judge awarded $30,000 general damages and segregated this figure into an award of $10,000 for the cervical strain and $20,000 for the TMJ injury.
Our review of the record convinces us that, based on the evidence presented at trial, the trial judge erred in granting the plaintiffs motion for a JNOV on the issue of general damages. That is, construing the evidence and reasonable inferences in favor of the defendant, without weighing the evidence, passing upon the credibility of witnesses, nor substituting one’s judgment for that of the jury, the inescapable conclusion in this case is that reasonable men could differ as to the verdict reached.
(a) Cervical Strain
In particular, with regard to Ms. Griffin’s cervical injury, the record reflects that she had suffered a very similar injury two months before the current accident. She visited Dr. Rockowitz once. She went to physical therapy for seven visits and, according to her testimony, her symptoms were completely resolved.
In the second accident plaintiff again sustained a cervical strain, albeit, somewhat more severe. She again visited Dr. Rockow-itz once. She thereafter underwent seventeen visits to physical therapy. This course of treatment ended in mid-June, 1989. Her last prescription for medication for cervical problems was filled in early June, 1989. Although she complained of some neck pain after this time and kept a diary of her al *367 leged complaints, she did not seek further treatment after this time.[6]
Based upon the evidence presented and the apparent inconsistencies in the testimony of the plaintiff concerning her condition, reasonable minds could differ as to the cause, extent, and duration of plaintiffs cervical injuries resulting from her second automobile accident. It would not have been unreasonable for the jury, in this case, to conclude that plaintiffs cervical strain from the second accident lasted for the duration of her treatment, that is, three months. Such a finding would be supported by the record.
Under these circumstances we find an increase in generally damages to $10,000 by the grant of a JNOV was error. We, therefore, reverse the court’s general damage award of $10,000 insofar as it concerns plaintiffs cervical injury and we reinstate the jury award for that injury, in the amount of $2,500.
(b) TMJ injury
It appears that the jury in this case refused to compensate plaintiff for her TMJ condition.
The record reflects that the exact cause of TMJ is unknown. The condition develops over time and it can be masked by other pain. TMJ can occur under various circumstances, other than trauma. One of those conditions is stress.
The test for determining a causal relationship between an accident and subsequent injuries is whether the plaintiff has proved through medical and lay testimony that it was “more probable than not” the injuries were caused by the accident. Mart v. Hill, 505 So.2d 1120, 1128 (La., 1987).
In this case, although Dr. Peak would postulate that the second accident caused the TMJ, he admittedly did not have enough information to support this postulation. Additionally, he testified that other potential contributing factors could cause the condition and these factors were not ruled out.
Under these circumstances, we must conclude that the jury could have determined that causation was not proved. Mart v. Hill, id.
Considering the non-specific origin of TMJ in general and the failure to affirmatively establish causation in the plaintiffs case, coupled with the delayed time within which the condition manifested itself, as well as the conditions under which this injury appeared, it was not unreasonable for this jury to conclude that the condition was solely attributable to plaintiffs first accident or that it resulted from a totally unrelated factor, such as stress.
We, therefore, reverse the judge’s ruling which granted the JNOV on this element of damages and awarded $30,000. We reinstate the jury verdict denying recovery for this element of damages.

Special Damages

The jury awarded plaintiff the sum of $1,500 special damages. In granting the JNOV the trial judge increased this amount to $12,838.53.
We find the trial court’s grant of the JNOV was correct, but the amount of special damages awarded by the trial court judge was in error.
Based upon our prior discussion it is clear that plaintiff is entitled only to those special damages which involved her cervical sprain treatment. The special damages total $1,624.88 [7] and the award should have been increased accordingly. Anderson v. New Orleans Public Service, Inc., supra.
The judgment of the district court on the issue of general damages is reversed and set aside and the jury verdict is reinstated. The judgment of the district court on the issue of special damages is amended to award $1,624.88 and as amended, is affirmed. Each party shall bear their respective costs of this appeal.
*368 REVERSED IN PART, AMENDED AND AS AMENDED AFFIRMED.

. The parties stipulate that plaintiff filed a motion for a JNOV and alternatively, for a new trial. The motion for the JNOV was granted and the parties agree that the trial judge inferentially denied the motion for a new trial.

. Following the filing of this suit Mr. Manning died and he was dismissed from the litigation. Andrew Jackson was cast for its $10,000 policy limits and has not appealed the trial court judgment.

. Dr. Peak referred plaintiff to Dr. Harrison, an ■ oral surgeon, for replacement of her two missing teeth.

. Plaintiff did not experience shock-like pain when her face was touched lightly, a click or pop when she opened her mouth widely, sideway motion nor locking of the jaw if her mouth opened widely. Her teeth did not hurt when she would bite. It was not difficult for her to find a comfortable jaw position. Her teeth were not sore nor her jaw tired in the morning.

.Her jaw often moved easily. Her bite was comfortable. She had' a little pain behind the ear, but no numb areas in her face.

. Although Dr. Peak referred the plaintiff to Dr. Kucharch.uk, an orthopedist, he did not testify and the nature of his finding and/or treatment, if any, were not explained.

. This sum consist of: $116.27 prescriptions; $328.45 emergency room; $243.41 ambulance; and $883.75 physical therapy; and x-ray report $53.00.