660 So.2d 172 (1995)
Souvanny PHIRATSAMY, Plaintiff-Appellant,
v.
Walter PIPES, et al., Defendants-Appellees.
No. 27209-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*173 Carl Rice & Associates by William F. Kendig, Shreveport, for appellant.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Shreveport, Casten & Pearce by Theodore J. Casten, Shreveport, for appellees.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this action arising out of an automobile accident, plaintiff appeals a jury verdict awarding allegedly inadequate general and special damages. Finding no abuse of discretion, we affirm.

Facts and Procedural History
On March 1, 1991, Souvanny Phiratsamy rode as a passenger in a 1985 Buick Skyhawk owned and operated by her daughter, Sisouda, in a northerly direction on Youree Drive in Shreveport. At the intersection with Pennsylvania Avenue, their vehicle collided with another automobile driven by Frances Pipes. Subsequently, due to injuries sustained in the mishap, the mother filed suit against Pipes and her insurer, Hartford Accident and Indemnity Company, as well as her daughter's insurer, State Farm Mutual Automobile Insurance Company. After trial on the merits, the jury found each driver to be fifty percent at fault and granted plaintiff the sums of $3,500 for past pain and suffering and $2,570.41 for past medical expenses. Phiratsamy now appeals both of these awards and the absence of any assessment for future medical outlays.

Discussion
In assessing damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion must be left to the judge or jury. LSA-C.C. Art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Sledge v. Continental Casualty, 25,770 (La.App.2d Cir. 06/24/94), 639 So.2d 805. In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Sledge, supra; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App.2d Cir.1987). Of course, upon finding an award is beyond that which a reasonable trier of fact could assess, the reviewing court may increase an award of general damages to the lowest amount that could appropriately be granted. Youn, supra; Sledge, supra. However, it is only after an articulated factual analysis discloses such abuse that guidance from prior awards becomes relevant. Id.
Appellant contends that, as a result of this accident, she now suffers with fibromyalgia, a chronic soft-tissue problem affecting the muscles and tendons and causing widespread low-grade pain. As evidenced by the general and special damage awards, however, the jury seemingly rejected this diagnosis, and our review fails to reveal any manifest error in that regard.[1]
*174 Immediately after the collision, Phiratsamy visited the emergency room at Willis-Knighton Medical Center, where she complained of pain in her head, neck, elbow, and knee, but reported no loss of consciousness and did not appear to be in acute distress. The physicians soon released her in good condition, recommending bed rest and that she see a doctor the next week, if necessary.
Phiratsamy first saw Dr. Austin Gleason, orthopedist, on March 5, 1991. At that time she reported symptoms consistent with those described at the emergency room. Physical examination revealed bruises near the tip of her elbow and below her knee cap, although both joints appeared stable. X-rays showed no fractures or dislocations. Dr. Gleason diagnosed contusions of the right knee and left elbow and myoligamentous strain of the neck and shoulders. At her next appointment ten days later, the doctor noted improvement and encouraged her to resume normal activities to the extent such tasks could be tolerated. By April 2, the orthopedist deemed his patient to be recovering nicely from the soft-tissue injuries and, also, noted that she would experience no permanent problems.
Plaintiff did not see Dr. Gleason again until February 27, 1992, almost eleven months later, when she repeated her original complaints while adding that she had begun to experience tingling and numbness in her left arm, especially at night. Subsequent electrodiagnostic examinations, however, revealed no nerve damage. By April 24, 1992, the date of her final visit, the physician suspected fibrositis[2] but conducted no test in that regard. Instead, he suggested that plaintiff see a rheumatologist.
Phiratsamy did not seek further treatment, however, until January 18, 1993. On that date, at her attorney's recommendation, she presented herself to Dr. Robert Goodman, a rheumatologist who conducted comprehensive physical tests to explore possible causes for her continued complaints of pain. Dr. Goodman examined for fibromyalgia, later explaining to the jury that to confirm such a finding the physician considers eighteen certain anatomically mapped trigger, or tender, points as well as other control points. The diagnostic criteria require that the patient report pain upon palpation of at least eleven of these trigger points; however, no such response should be elicited at the control areas. While the reactions evoked during each examination of the patient need not be identical, Dr. Goodman explained that the results should be "very, very consistent."
Although Dr. Goodman eventually diagnosed fibromyalgia secondary to the March 1991 accident, his trial testimony and office reports revealed that Phiratsamy never truly met the diagnostic criteria. On the initial visit, the rheumatologist discovered tenderness at only ten of the required trigger points. (An additional painful area, not among the trigger points, did not provide a conclusive basis for the diagnosis.) At that juncture, although suspicious that the patient had fibromyalgia, the doctor declined to make the diagnosis due in part to communication difficulties.[3] A second examination, on March 1, 1993, appeared to be fairly consistent with the first. However, after a third visit on June 7, 1993, Dr. Goodman found it necessary to recant his earlier position. Palpation of the trigger points then elicited pain in only five areas. As a result, the diagnosis changed to "soft tissue rheumatism" with "some tender points consistent with fibromyalgia." Thereafter, Phiratsamy did not return until January 1994.[4] At that time, she exhibited tender points more consistent with the first and second examinations. Still, Dr. Goodman testified to finding only nine areas of painfulness upon palpation.
In contending that the jury either erroneously rejected Dr. Goodman's diagnosis or abusively awarded a low sum for fibromyalgia, appellant fails to recognize that reasonable *175 minds may appreciate evidence, such as presented here, very differently. Said more directly, after weighing and evaluating the medical and lay testimony, the jury may accept or reject any expert's view, even to the point of substituting its own common sense and judgment for that of an expert witness where, in the fact-trier's opinion, such substitution appears warranted by the evidence as a whole. Lloyd v. TG & Y Stores Co., 556 So.2d 629 (La.App.2d Cir.1990), and authorities therein; see also Bates v. Willis, 613 So.2d 691 (La.App. 5th Cir.1993). Obviously then, neither is a jury required to accept totally a plaintiff's perception concerning the degree and magnitude of his or her injuries. Cf. Alaywan v. Commercial Union Ins. Co., 625 So.2d 243 (La.App.2d Cir.1993), writ denied, 93-2658 (La. 02/04/94), 633 So.2d 166. Also see Richard v. Dollar General Store, 606 So.2d 831 (La.App.2d Cir.1992), writ denied, 608 So.2d 197 (La.1992). Moreover here, cross-examination disclosed to the fact-triers that plaintiff's attorney regularly referred other clients to Dr. Goodman, and that such referrals posed the potential for thousands of dollars in income each year.
Thus, the jury could have reasonably rejected the diagnosis of fibromyalgia and concluded instead that the accident at issue caused Phiratsamy to suffer, as described by Dr. Gleason, contusions of the right knee and left elbow and a myoligamentous strain of the neck and shoulders, all resolving within approximately one month. So too, upon applying the previously mentioned appellate standards, the record before us does not disclose that the jury abused its discretion in awarding $3,500 for past general damages and disallowing the claim for future pain and suffering. Parenthetically, any consideration of comparative awards would reveal similar results. See, e.g., Collins v. Bentley, 24,457 (La.App.2d Cir. 10/26/94), 645 So.2d 283 (affirming a $2,000 general damage award for a plaintiff who suffered a strained neck, arm, back, and foot, and required medical attention for three months); Hill v. Sampson, 628 So.2d 81 (La.App.2d Cir.1993) (award of $3,000 not abusively high for a mild to moderate neck strain lasting more than six weeks); Griffin v. Manning, 633 So.2d 361 (La.App. 1st Cir.1993) (reinstating jury's $2,500 general damage award for a whiplash lasting three months, after reversing the trial court's JNOV increase); Kimble v. Reason, 626 So.2d 6 (La.App. 1st Cir.1993) ($3,000 adequately compensated a mild cervical and lumbar strain).
Nor do we find error in the jury's award of special damages. A plaintiff's recovery of medical charges must be confined to those expenses related to the accident. Chambers v. Graybiel, 25,840 (La.App.2d Cir. 06/22/94), 639 So.2d 361, writ denied, 94-1948 (La. 10/28/94), 644 So.2d 377. Furthermore, regarding future medical expenses, it must be demonstrated that such outlays more probably than not will be incurred. Thomas v. Petrolane Gas, 588 So.2d 711 (La.App.2d Cir.1991), writ denied, 590 So.2d 1201 (La. 1992). Hence, after presumably concluding that Phiratsamy did not suffer from fibromyalgia as a result of the March 1991 mishap, the jury correctly disallowed recovery for Dr. Goodman's past and anticipated medical charges.

Conclusion
Accordingly, for the foregoing reasons, the judgment below is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] The medical expenses awarded reflect a disallowance of fees attributable to Dr. Robert Goodman, the rheumatologist who diagnosed and followed Phiratsamy's alleged fibromyalgia.
[2] The medical community formerly referred to fibromyalgia as fibrositis.
[3] Phiratsamy speaks no English and could converse with her physicians (and the court) only through an interpreter.
[4] At trial, appellant admitted that she became involved in another automobile accident on July 8, 1993, and that her doctor found no resulting problems. The records of neither Drs. Gleason nor Goodman reflect such a visit.